**FILED**
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**March 12, 2021**

**Blaine F. Bates**
**Clerk**

PUBLISH

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

VICTOR P. KEARNEY,

      Debtor.

_____

VICTOR P. KEARNEY,

      Appellant,

v.

UNSECURED CREDITORS
COMMITTEE, LOUIS ABRUZZO and
BENJAMIN ABRUZZO, Trustees of the
Mary Pat Abruzzo Kearney Testamentary
Trusts B and C, and KEVIN YEAROUT,

      Appellees.

BAP No. NM-20-033

Bankr. No. 17-12274
Chapter 11

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of New Mexico

_____

Debbie E. Green (Marcus A. Helt and Stacy Obenhaus with her on the brief) of Foley &
Lardner LLP, Dallas, Texas for Appellant.

Thomas D. Walker (Chris W. Pierce with him on the brief) of Walker Law PC,
Albuquerque, New Mexico for Appellee Unsecured Creditors Committee.

Paul M. Fish (Spencer L. Edelman with him on the brief) of Modrall, Sperling, Roehl,
Harris & Sisk, P.A., Albuquerque, New Mexico for Appellees Louis Abruzzo and
Benjamin Abruzzo, Trustees of the Mary Pat Abruzzo Kearney Testamentary Trusts B
and C.

James A. Askew of Askew & White, LLC, Albuquerque, New Mexico for Appellee Kevin Yearout.

_____

Before **ROMERO**, Chief Judge, **SOMERS**, and **PARKER**, Bankruptcy Judges.

_____

**SOMERS**, Bankruptcy Judge.

_____

A debtor, understandably, wants to choose the chapter in which he proceeds under the Bankruptcy Code. And sometimes things change, requiring a debtor to change his or her initial choice. Debtors talk about an "absolute right to convert" giving them this choice to convert, and generally, bankruptcy courts are happy to grant a debtor a conversion. But are there limits? When is an "absolute right" to convert *not* absolute?

The Supreme Court answered the question when considering conversion from chapter 7 to 13 under 11 U.S.C. § 706(a)[1] in *Marrama v. Citizens Bank of Massachusetts*,[2] by relying on the statutory limit to conversion in § 706(d) that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."[3] Under a very similar statutory framework, we now address a debtor's attempted conversion from chapter 11 to chapter 7 under § 1112(a), and conclude that under § 1112(f), the Bankruptcy Court in this case was correct to consider whether Debtor Victor Kearney's case would be immediately reconverted, thereby adopting the procedural shortcut approved by the Supreme Court in *Marrama*.

_____

[1] All future references to "Bankruptcy Code," "Code," or "§," refer to Title 11 of the United States Code.
[2] 549 U.S. 365 (2007).
[3] 11 U.S.C. § 706(d).

We affirm the decision of the Bankruptcy Court denying Debtor's motion to convert his chapter 11 case to chapter 7. Section 1112(a) does not give debtors an absolute right to convert. The right to convert granted by § 1112(a) is cabined by § 1112(f)'s reference to qualifying as a debtor under the chapter to which the debtor seeks conversion. In this case, Debtor sought conversion to chapter 7, and the Bankruptcy Court did not abuse its discretion when it concluded Debtor's case would be immediately reconverted under § 706(b) and Debtor could not, therefore, "be a debtor under such chapter."[4]

I.    Facts[5]

Many years ago, Benjamin and Pat Abruzzo developed a ski complex and tramway in the Sandia Mountains in New Mexico under the Alvarado Realty Company

---

[4] 11 U.S.C. § 1112(f).

[5] The Bankruptcy Court made a few factual findings in its opinion on Debtor's motion to convert, but also extensively relied on its prior opinions issued throughout Debtor's case for its facts. *Opinion* at 1 n.1 (June 18, 2020 Opinion denying motion to convert, hereinafter "*Opinion on Conversion*"), *in* Appellant's App. at 154.

Many of those opinions are included on the record on appeal. *See Memorandum Opinion* (September 14, 2018 Memorandum Opinion granting 2004 motion in part, hereinafter "*Opinion on 2004 Exam*"), *in* Appellant's App. at 2862; *Memorandum Opinion* (September 28, 2018 Memorandum Opinion denying Debtor's emergency motion to stay pending appeal, hereinafter "*Opinion on Stay*"), *in* Appellant's App. at 2972; *Opinion* (October 11, 2018 Opinion granting motion to abstain from hearing removed proceeding and remanding to state court), *in* Appellant's App. at 5049; *Opinion* (December 7, 2018 Opinion denying Debtor's Application to Employ counsel for the Nevada lawsuit, hereinafter *Opinion on Nevada Counsel*), *in* Appellant's App. at 3352; *Opinion* (February 28, 2019 Opinion granting plan confirmation, hereinafter "*Opinion on Confirmation*"), *in* Appellant's App. at 3841; *Opinion* (October 24, 2019 Opinion denying application to employ, hereinafter "*Opinion on Employment*"), *in* Appellant's App. at 4313; *Opinion* (May 13, 2020 Opinion denying motion to dismiss of ex-wife, hereinafter *Opinion on Dismissal*), *in* Appellant's App. at 4720; *Opinion on Conversion*, *in* Appellant's App. at 154.

(ARCO). The elder Abruzzos died in 1985, and were survived by their four children: Louis, Benny, Richard, and Mary. The children took over management of ARCO.

Debtor married Mary Pat Abruzzo Kearney in 1988. Shortly after her marriage, Mary executed a will that placed her share of the stock in ARCO that she owned during her life in two trusts (Trust B and Trust C). Mary then died in 1997. At her death, Mary owned approximately 18.5 percent of the stock interest in ARCO, which is now managed by Mary's brothers Louis and Benjamin.[6]

Mary's will named Debtor as the life beneficiary of the two trusts at issue and named Debtor and her brothers as trustees;[7] Mary's brothers (or their children) are the residual beneficiaries of the two trusts. Mary's will contains a spendthrift clause protecting its corpus from Debtor's creditors, and Debtor's interest in the trusts is not part of the bankruptcy estate. Since Mary's death in 1997, Debtor has received distributions of about $16 million from the trusts, all generated by ARCO's successful business ventures.[8] Debtor has no income other than from these trusts.

---

[6] Richard Abruzzo died in 2010.

[7] Debtor has since resigned as co-trustee.

[8] The trusts paid Debtor about $800,000 a year between 1998 and 2018. Mary's will directs the trustees to pay Debtor as follows: regarding Trust B, the trustees are directed to pay "all of the net income" from the trust "in convenient installments" in an amount the trustees in their "sole discretion shall determine primarily" for medical care, comfortable maintenance, welfare, and education. *Motion of Debtor Victor P. Kearney to Convert his Chapter 11 Case to Chapter 7* (hereinafter "*Motion to Convert*") at 2, *in* Appellant's App. at 144. Regarding Trust C, the trustees are directed to pay "all of the net income" from the trust "in convenient installments but no less frequently than quarter-annually." *Id.*, *in* Appellant's App. at 144. The trustees can also exercise their discretion to pay sums from the principal of Trust C "as necessary or advisable from time to time," again for medical care, education, support, and "maintenance in reasonable comfort." *Id.*, *in* Appellant's App. at 144.

In 2013, Debtor sued the Abruzzos in New Mexico state court for breach of fiduciary duty in administering the trusts, and the Abruzzos filed counterclaims against Debtor for breach of fiduciary duty.[9] After a jury trial on Debtor's claims in 2015, a directed verdict was entered against Debtor.[10] In 2017, the state court tried the counterclaims against Debtor by the trustees. The Bankruptcy Court heavily discussed the factual findings from the state court litigation in its opinions in this case and, as relevant here, Debtor's behavior therein. Examples include:

- In violation of a confidentiality order in the state court action, Debtor disclosed confidential ARCO information.[11]

- After giving direct testimony at trial, Debtor failed to appear for cross-examination, and proffered a medical excuse that was never substantiated.[12]

- The state court entered monetary sanctions against Debtor in April 2017, based on findings that Debtor was an individual who "bears no allegiance to the truth, but who will say whatever he thinks will achieve his goals," Debtor had "little or no credibility," Debtor "repeatedly exhibited bad faith non-compliance with his discovery obligations," and Debtor's conduct in the state court was "an affront to this particular Court and to the entire judicial process."[13]

- Debtor repeatedly violated orders of the state court.[14]

- Debtor did not participate in mediation at the state court in good faith.[15]

---

[9] *Id.* at 2-3, *in* Appellant's App. at 144-45; *Opinion on 2004 Exam* at 2, *in* Appellant's App. at 2863 (summarizing allegations from Debtor's October 2014 amended state court complaint).

[10] The Abruzzos asked for attorneys' fees and costs, and were awarded about $666,000 by the state court for the same. *Opinion on Confirmation* at 3, *in* Appellant's App. at 3843.

[11] *Opinion on 2004 Exam* at 4, *in* Appellant's App. at 2865.

[12] *Opinion on Stay* at 3, *in* Appellant's App. at 2974.

[13] *Opinion on 2004 Exam* at 5-6, *in* Appellant's App. at 2866-67.

[14] *Opinion on Stay* at 3, *in* Appellant's App. at 2974.

[15] *Id.*, *in* Appellant's App. at 2974.

- During the trial on the merits of Debtor's claims, the state court concluded Debtor had "significant credibility issues."[16]

Damages were awarded by the state court against Debtor, and the additional matter of the appointment of a successor trustee was to be determined at a separate hearing on September 5, 2017. (By this point, Debtor had resigned as co-trustee.)

Before that September 5, 2017 state court hearing occurred, on September 1, 2017, Debtor filed a chapter 11 bankruptcy petition.[17] An Unsecured Creditors Committee was appointed by the U.S. Trustee to represent Debtor's unsecured creditors.[18]

Debtor battled with the Abruzzos and the Unsecured Creditors Committee early and often, and little progress was made in his reorganization.[19] The Bankruptcy Court ultimately denied Debtor's request for a second extension of the exclusivity period to file his own plan (and reconsideration thereof) in June 2018.[20] A proposed plan by the Unsecured Creditors Committee (the "UCC plan") required the Bankruptcy Court to grant stay relief for a return to state court to allow that court to separate Debtor from ARCO and the trusts.[21] The UCC plan provided that the Abruzzos would sell the trusts'

---

[16] *Opinion on 2004 Exam* at 6, *in* Appellant's App. at 2867.

[17] *Petition*, *in* Appellant's App. at 169.

[18] *Appointment of a Committee of Unsecured Creditors in a Chapter 11 Case*, *in* Appellant's App. at 701.

[19] For example, the Abruzzos objected to the *nunc pro tunc* employment of Debtor's bankruptcy counsel. *In re Kearney*, 581 B.R. 644 (Bankr. D.N.M. 2018). In addition, a mediation was conducted in February 2018, *Mediation Order*, *in* Appellant's App. at 742-46, but mediation was not successful. Debtor also filed an adversary proceeding against the Abruzzos in their capacity as trustees, to recover alleged preferential and improper transfers. *Opinion on 2004 Exam* at 7, *in* Appellant's App. at 2868.

[20] *Order Denying Debtor's Renewed Motion for Order Extending Exclusivity Period*, *in* Appellant's App. at 1509.

[21] *Order Granting in Part the Abruzzo Trustees' Motion for Relief from Automatic Stay*, *in* Appellant's App. at 2809; *Order Granting the Supplemental Motion for Relief from Automatic*

6

ARCO stock back to ARCO for about $12 million, and would pay $3 million to the bankruptcy estate in exchange for releases of claims against the trusts, the Abruzzos, ARCO, and related parties. As a result, the state court had to approve trust modifications necessary to complete these transactions.[22]

The state court set a hearing for these issues on October 3, 2018. The day before the hearing, Debtor did two things: (1) he removed the state court action to the United States District Court for the District of New Mexico, claiming diversity jurisdiction, and (2) he filed a new lawsuit against the trustees in the United States District Court for the District of Nevada, again claiming diversity of citizenship, and alleging Debtor was a citizen of Nevada.[23] Multiple courts concluded Debtor's actions were "frivolous,"[24] a "sham litigation tactic,"[25] and dubious.[26] The Bankruptcy Court expressly found that

---

*Stay*, *in* Appellant's App. at 2966. Debtor appealed the decisions on stay relief, and sought stay pending appeal, which was denied by the Bankruptcy Court and the appellate court. *Opinion on Stay* at 1, *in* Appellant's App. at 2972; *see also Kearney v. Abruzzo*, No. 18-888 JB/GJF, 2018 WL 5112909 (D.N.M. Oct. 19, 2018) (unpublished) (order denying emergency motion for stay pending appeal).

[22] *Opinion on Conversion* at 3, *in* Appellant's App. at 156; *Opinion on Stay* at 4-5, *in* Appellant's App. at 2975-76 (detailing the plan's proposed changes to the trusts).

[23] Debtor sought approval for the employment of counsel in the Nevada suit, which was denied. Debtor appealed the decision, and that appeal was dismissed for lack of prosecution. See *Kearney v. Official Comm. of Unsecured Creditors*, No. 18-1223 MV/JFR, 2019 WL 3975387 (D.N.M. Aug. 2, 2019) (unpublished) and *Kearney v. Official Comm. of Unsecured Creditors*, No. 18-233 MV/JFR, 2019 WL 3975369 (D.N.M. Aug. 22, 2019) (unpublished).

[24] *Opinion on Nevada Counsel* at 7, *in* Appellant's App. at 3358.

[25] *Id.* at 4, *in* Appellant's App. at 3355. Debtor reported that he lived in a home in Albuquerque, New Mexico at the filing of his bankruptcy petition, and used that address in his monthly operating reports. Debtor did own real estate in Nevada and planned to sell the home until the hearings on his alleged diversity of citizenship, at which time he reported he "might not sell" the house and that he lived in the Nevada home. *Id.* at 2 n.2, *in* Appellant's App. at 3353.

[26] *Id.* at 6-7, *in* Appellant's App. at 3357-58 (detailing why the Bankruptcy Court found "Debtor's new claim to Nevada citizenship" was "dubious").

7

Debtor engaged in "questionable and fruitless attempts to remove the case"[27] from the state court's jurisdiction. The state court action was remanded to the state court after being transferred to the Bankruptcy Court,[28] and the status of the Nevada action is not apparent from the record.

Ultimately, the state court approved the trust modifications and the ARCO share buyback on October 31, 2018.[29] After a two-day trial on the confirmability of the UCC plan, the Bankruptcy Court confirmed the UCC plan on February 28, 2019.[30] The Bankruptcy Court noted in its written opinion on confirmation of the UCC plan multiple "questionable or improper"[31] actions by the Debtor, some of which have already been mentioned herein, and additionally included:

- Debtor likely spearheading a plan to attempt to purchase the claims of members of the Unsecured Creditors Committee.[32]

- Falsely claiming Mary was a Nevada resident when she died.[33]

---

[27] *Opinion on Conversion* at 3, *in* Appellant's App. at 156.
[28] *Abruzzo v. Kearney*, No. 18-cv-0922 JCH/SCY, 2018 WL 4854638 (D.N.M. Oct. 5, 2018) (unpublished).
[29] Debtor appealed the state court ruling, and if a decision on the appeal has been issued, it is not in the record.
[30] *Order Confirming Plan of Reorganization*, *in* Appellant's App. at 3865-67. The Bankruptcy Court had planned to try both the UCC plan and Debtor's proposed plan at the same time, but Debtor amended his plan for the seventh time the day after exhibit and witness lists were due for that trial date, forcing a continuance of the trial on Debtor's plan. *Order Resulting from Hearing on Confirmability of the Debtor's Plan* at 1-6, *in* Appellant's App. at 3543-48. The Bankruptcy Court ruled that Debtor "chose to ignore" significant problems with his plan until the last moment. *Id.* at 6, *in* Appellant's App. at 3548.
[31] *Opinion on Confirmation* at 12, *in* Appellant's App. at 3852.
[32] *Id.* at 11-12, *in* Appellant's App. at 3851-52.
[33] *Id.* at 12 n.16, *in* Appellant's App. at 3852.

- Failing and refusing to pay professional fees incurred in the Bankruptcy Court, and then responding to the Bankruptcy Court's order to pay fees by emptying his bank account.[34]

- Failing to alter his "expensive lifestyle or spending habits" while a chapter 11 bankruptcy debtor.[35]

- Paying his home mortgage in violation of the automatic stay.[36]

- Changing his position about the value of his intellectual property.[37]

The Bankruptcy Court also made specific findings about Debtor's reorganization, and the likely success thereof, finding that Debtor had a "mistaken belief that only he should be allowed to control the reorganization process, whatever the cost, delay, or acceptability of payment proposals."[38] The Bankruptcy Court noted that Debtor's most recently amended plan received a majority of votes *against* it, while the UCC plan received a majority of accepting votes.[39] The Bankruptcy Court viewed the UCC plan as the only way to prevent continuous litigation,[40] and concluded that the UCC plan was the best deal creditors could get to pay unsecured creditors as much as possible.[41] The Bankruptcy Court also concluded that confirmation of the UCC plan would benefit Debtor's domestic

---

[34] *Id.*, *in* Appellant's App. at 3852.
[35] *Id.*, *in* Appellant's App. at 3852.
[36] *Id.*, *in* Appellant's App. at 3852.
[37] *Id.*, *in* Appellant's App. at 3852.
[38] *Id.* at 7, *in* Appellant's App. at 3847.
[39] *Id.* at 10, n.13, *in* Appellant's App. at 3850.
[40] Regarding the UCC plan's settlement of Debtor and the estate's claims against ARCO and the Abruzzos, the Bankruptcy Court concluded Debtor had little chance of success, his claims had been expensive to litigate, he was not a sympathetic plaintiff, and the evidence supported the state court finding that neither ARCO nor the Abruzzos breached any duties to him. *Id.* at 14, *in* Appellant's App. at 3854.
[41] *Id.* at 11, *in* Appellant's App. at 3851. The Bankruptcy Court found that general unsecured creditors and "several large creditors" supported the UCC plan. *Id.* at 14, *in* Appellant's App. at 3854.

support obligation creditor, "substantially increasing [Debtor's] ability to pay alimony and child support."[42] And finally, the Bankruptcy Court concluded the UCC plan was in Debtor's best interest, because his debts of more than $8.6 million, including priority tax claims, would be paid off.[43]

The effective date of the confirmed plan is not until ten days *after* the confirmation order becomes final and additional substantive steps are taken.[44] Debtor appealed the Bankruptcy Court's plan confirmation order to this Court,[45] where it was upheld,[46] and to the Tenth Circuit Court of Appeals, where the decision was again affirmed,[47] but the appeal time from that most recent decision has not run. Until the UCC plan is effectuated, the Bankruptcy Court entered an order permitting the trusts to make estimated tax payments on Debtor's behalf directly to taxing authorities, noting that in the past in his chapter 11 case, Debtor had failed to make payments as directed by the Court.[48]

---

[42] *Id.* at 16, *in* Appellant's App. at 3856.

[43] *Id.* at 17, *in* Appellant's App. at 3857.

[44] *Second Amended Chapter 11 Plan of Reorganization of the Official Committee of Unsecured Creditors* at 15, *in* Appellant's App. at 3053 (defining "Effective Date" as "the date ten (10) business days after all of the following conditions have been satisfied: (i) the Confirmation Order shall have been entered an shall be a Final Order; (ii) all documents, actions, and agreements necessary to implement the Plan have been executed; (iii) closing on the ARCO Stock Redemption shall have occurred; and (iv) receipt by the Creditor Trustee of the Trust Payment.").

[45] *Notice of Appeal*, *in* Appellant's App. at 3869.

[46] *In re Kearney*, No. NM-19-010, 2019 WL 6523171 (10th Cir. BAP Dec. 4, 2019) (unpublished), *aff'd sub nom. Kearney v. Unsecured Creditors Comm.*, ___ F.3d ___,2021 WL 710850 (10th Cir. Feb. 2021). A more detailed summary of the terms of the UCC plan are included in this opinion. *Id.* at *2.

[47] *Notice of Appeal to United States Court of Appeals for the Tenth Circuit*, *in* Appellant's App. at 4381; *Kearney v. Unsecured Creditors Comm.*, ___ F.3d ___, 2021 WL 710850 (10th Cir. 2021).

[48] *Order Regarding Tax Payments* at 1-2, *in* Appellant's App. at 4153-54.

On August 27, 2019, an indictment was filed against Debtor charging him with conspiring to commit fraud on the Internal Revenue Service and making and subscribing false income tax returns.[49] The state court referred Debtor to the IRS in 2017 based on evidence from the trial there that showed Debtor had not "properly reported his income for many years, had unilaterally altered tax forms issued to him by third parties, and had not filed required tax returns in multiple years."[50] The state court relied on an expert witness in forensic accounting, who called Debtor's tax situation a "tax abomination,"[51] and also concluded that Debtor lied under oath in testifying about his taxes.[52] The Bankruptcy Court noted that it appeared Debtor fraudulently avoided tax liability on about $7 million of income.[53] At his initial appearance on his criminal indictment on September 12, 2019, Debtor entered a not guilty plea.

On September 16, 2019, Debtor signed an engagement letter with Attorney Amy Sirignano. Debtor then filed in his bankruptcy case an application to employ Attorney Sirignano as his criminal defense counsel, which the Bankruptcy Court ultimately denied in October 2019. The Bankruptcy Court instructed Debtor that if he wished to pay for his own attorney, then he "must use non-estate assets at his disposal, if any he has."[54] Attorney Sirignano entered her appearance in Debtor's criminal case on January 7, 2020.

---

[49] *Indictment*, *in* Appellee's Supp. App. at 5-10.
[50] *Opinion on Conversion* at 3, *in* Appellant's App. at 156.
[51] *Id.* at 4, *in* Appellant's App. at 157.
[52] *Id.* at 3-4, *in* Appellant's App. at 156-57.
[53] *Id.* at 4, *in* Appellant's App. at 157.
[54] *Opinion on Employment* at 10, *in* Appellant's App. at 4322.

Four months after the denial of his motion to employ Attorney Sirignano, in February 2020, Debtor moved to convert his chapter 11 case to chapter 7.[55] In that motion, despite having somehow already employed Attorney Sirignano, Debtor argued that he had no non-estate assets to pay a criminal attorney, and therefore had "no option but to convert this Chapter 11 case to Chapter 7."[56] Debtor argued he had an absolute right to convert under § 1112(a).[57] Oppositions to the motion to convert, as well as motions seeking immediate reconversion if the motion to convert were granted, were filed by the Abruzzos, the Unsecured Creditors Committee, and one large creditor.[58]

---

[55] Also, in early 2020, Debtor's second wife, whom he married in 2013 and divorced in 2015, filed a motion seeking to dismiss Debtor's case. *Opinion on Dismissal* at 1-2, *in* Appellant's App. at 4720-21. In the opinion denying the motion to dismiss, the Bankruptcy Court concluded that Debtor made payments to the ex-wife that were contrary to his prior agreement with her on payments and stated a version of the agreement with the ex-wife in his proposed plans that was "significantly different" than what the ex-wife stated in her pleadings. *Id.* at 4, *in* Appellant's App. at 4723. The Bankruptcy Court also pointed out that the timing of the ex-wife's motion was unusual, suggesting that she was attempting to aid Debtor in defeating the UCC plan, not seeking to maximize her recovery. *Id.* at 9, *in* Appellant's App. at 4728.

[56] *Motion to Convert* at 5, *in* Appellant's App. at 147.

[57] *Id.* at 6, *in* Appellant's App. at 148. Debtor moved to strike the opposition to his motion filed by the Abruzzos, but the Bankruptcy Court denied that motion, *Order Denying Motion to Strike*, *in* Appellant's App. at 4611, and the decision was not appealed. The opinion supporting the order denying the motion to strike was not included in the record on appeal, but is available at *In re Kearney*, 615 B.R. 488 (Bankr. D.N.M. 2020). In that opinion, the Bankruptcy Court called Debtor's arguments "ludicrous" and said that they did "not pass the straight-face test." *Id.* at 493-94.

[58] *See Objection to Kearney's Motion to Convert his Chapter 11 Case to Chapter 7 and Motion to Reconvert to Chapter 11*, *in* Appellant's App. at 4523; *Creditor Kevin Yearout's Joinder in Doc. No. 103[7], the Abruzzo Trustee[s] Objection to Kearney's Motion to Convert his Chapter 11 Case to Chapter 7*, *in* Appellant's App. at 4535; *Unsecured Creditors Committee's Objection to "Motion of Debtor Victor P. Kearney to Convert this Chapter 11 Case to Chapter 7"*, *in* Appellant's App. at 4536 (also stating within pleading that "[i]n the event that the Court concludes that conversion is required, the UCC requests that the Court immediately re-convert the case to Chapter 11"); *Creditor Kevin Yearout's Joinder in Doc. No. 1039, the Unsecured Creditor Committee's Objection to Kearney's Motion to Convert his Chapter 11 Case to Chapter 7*, *in* Appellant's App. at 4552.

The Bankruptcy Court entered an order denying Debtor's motion to convert on June 18, 2020. In its Opinion, the Bankruptcy Court made factual findings that Attorney Sirignano had been actively defending Debtor in his criminal case since her appearance therein, and though the court had no evidence as to how she had been paid to date, there was no evidence she was "concerned about or unhappy with her compensation arrangements" with Debtor.[59] The Bankruptcy Court found that Debtor's "professed reason for conversion [was] a pretext," and that the real desire to convert was an effort to "cancel" the confirmed UCC plan.[60]

The Bankruptcy Court then made multiple, alternate, legal conclusions. First, the Bankruptcy Court discussed the Supreme Court's decision in *Marrama* .[61] The Bankruptcy Court concluded Debtor was a bad faith debtor, and also would be subject to immediate reconversion under § 706(b), and therefore was ineligible for chapter 7 relief.[62] The Bankruptcy Court also concluded that a confirmed chapter 11 creditor plan

---

Because of the multiple motions to reconvert Debtor's case if his motion to convert was granted, Debtor had reasonable notice of the issue, and his argument to the contrary is rejected. *See, e.g.*, *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir. 1988) (concluding that even one-day's notice for hearing on reconversion was reasonable when same lawyers had been involved throughout and were knowledgeable of all facts). The first pleading seeking reconversion to chapter 11 if Debtor's motion to convert to chapter 7 was granted was served on Debtor and all creditors fourteen days before the hearing on the motion to convert. *Victor P. Kearney's Omnibus Response to the Objections to Debtor's Motion to Convert Case from Chapter 11 to Chapter 7*, in Appellant's App. at 4593.

[59] *Opinion on Conversion* at 4, *in* Appellant's App. at 157.
[60] *Id.* at 9, *in* Appellant's App. at 162.
[61] 549 U.S. 365 (2007).
[62] *Opinion on Conversion* at 6-7, *in* Appellant's App. at 159-60.

should impact a debtor's right to conversion.[63] Finally, the Bankruptcy Court rejected

Debtor's argument that his Sixth Amendment rights were impacted.[64]

II.      Jurisdiction and Standard of Review

Debtor appeals the denial of his motion to convert. An order denying a motion to

convert is generally an interlocutory order,[65] but this Court has jurisdiction to hear

appeals from interlocutory orders "with leave of the court."[66] Leave to appeal was

granted by a prior panel of this Court.[67] Debtor then sought leave to file a direct appeal to

the Tenth Circuit Court of Appeals, but that request was denied.[68] The Court therefore

has jurisdiction over this appeal.

We will review the Bankruptcy Court's interpretation of the Code *de novo*.[69]

Under *de novo* review, we make an independent determination of each question of law.[70]

We will review the Bankruptcy Court's findings of fact for clear error,[71] and

---

[63] *Id.* at 8, *in* Appellant's App. at 161.

[64] *Id.* at 8-9, *in* Appellant's App. at 161-62.

[65] *In re Fox*, 241 B.R. 224, 229 (10th Cir. BAP 1999) ("An order denying a motion to convert or dismiss a bankruptcy proceeding is not a[] [final] order that impacts either the assets of the bankruptcy estate or the priority of creditors.").

[66] 28 U.S.C. § 158(a)(3).

[67] BAP ECF No. 18.

[68] BAP ECF No. 32. Debtor also filed a petition for a writ of mandamus in the Tenth Circuit, requesting the Circuit Court vacate the BAP's order denying the request for direct appeal and consider the issue, and the Tenth Circuit denied Debtor's petition. *Order*, No. 20-2127 (10th Cir. Nov. 4, 2020).

[69] *In re Morreale*, 959 F.3d 1002, 1005 (10th Cir. 2020) (quoting *In re Woods*, 743 F.3d 689, 693 (10th Cir. 2014)).

[70] *Nazar v. N. Am. Savings Bank FSB (In re Born)*, 357 B.R. 630, 632 (10th Cir. BAP 2006) (citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 268 (1991)).

[71] *See In re Young*, 237 F.3d 1168, 1172 (10th Cir. 2001) (reviewing factual determinations of bankruptcy court for clear error).

14

discretionary decisions concerning conversion will be reviewed for abuse of discretion.[72]

Under clear error review, "[a]finding is not clearly erroneous unless 'it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made.'"[73] "Under the abuse of discretion standard[,] 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[74] As with the clearly erroneous standard, when applying the abuse of discretion standard, deference is given to the Bankruptcy Court "'because of its first-hand ability to view the witness or evidence and assess credibility and probative value.'"[75]

III.   Analysis

A.   The So-Called "Absolute Right" to Convert

---

[72] Courts considering conversion between chapter 7 and chapter 11 review a bankruptcy court's decision for abuse of discretion. *In re Daughtrey*, 896 F.3d 1255, 1273 (11th Cir. 2018) (explaining the weight of authority suggests denial of a motion to convert is reviewed for abuse of discretion); *see also In re Takano*, 771 F. App'x 805, 806 (9th Cir. 2019) (unpublished) (reviewing denial of creditor's motion to convert chapter 7 case to chapter 11 and stating that court had "broad discretion to convert to a Chapter 11 case based on what will most inure to the benefit of all parties in interest" (internal quotation omitted)); *In re Schlehuber*, 558 F. App'x 715, 716 (8th Cir. 2014) (unpublished) (reviewing grant of creditor's motion to convert from chapter 7 to chapter 11 for abuse of discretion); *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir. 1988) (reviewing bankruptcy court decision to grant conversion of case to chapter 11 after prior conversion from chapter 11 to chapter 7 and holding the decision whether to reconvert a case back to chapter 11 after a prior conversion from chapter 11 to chapter 7 was "within the discretionary powers of the bankruptcy court based on the court's determination of what will most inure to the benefit of all parties in interest").

[73] *In re Ford*, 492 F.3d 1148, 1153 (10th Cir. 2007) (quoting *Connolly v. Harris Tr. Co. of Ca. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1240 (10th Cir. 2002)).

[74] *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).

[75] *Id.* (quoting *McEwen*, 926 F.2d at 1553-54).

Conversion or dismissal of a chapter 11 case is governed by § 1112. That section states, in pertinent part:

> (a) The debtor may convert a case under this chapter to a case under chapter 7 of this title unless--
>> (1) the debtor is not a debtor in possession;
>> (2) the case originally was commenced as an involuntary case under this chapter; or
>> (3) the case was converted to a case under this chapter other than on the debtor's request.
>
> . . .
>
> (f) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.[76]

Despite arguing that he had an absolute right to convert his case, Debtor does acknowledge that § 1112 places limits on that right.[77]

First, the initial three limits on conversion are found in § 1112(a). A chapter 11 debtor seeking to convert the case to chapter 7 under § 1112 must be a "debtor in possession."[78] Upon filing a chapter 11 petition, a debtor is generally a debtor in possession unless or until a case trustee is appointed, the debtor's plan of reorganization is confirmed, the case is dismissed, or the case is converted.[79] The confirmed plan in

---

[76] 11 U.S.C. § 1112.

[77] Appellant's Br. 10-11 ("Thus, under section 1112, there are four—and only four—limitations on a chapter 11 debtor's right to convert to chapter 7."). The "absolute" argument comes from legislative history that states "subsection (a) gives the debtor an absolute right to convert a voluntarily commenced chapter 11 case in which the debtor remains in possession to a liquidation case." S. REP. 95-989, 117, as reprinted in 1978 U.S.C.C.A.N. 5787, 5903; H.R. REP. 95-595 405, as reprinted in 1978 U.S.C.C.A.N. 5963, 6361.

[78] 11 U.S.C. § 1112(a)(1).

[79] 11 U.S.C. § 1101(1) (defining "debtor in possession" as a "debtor," unless a qualified trustee is serving); § 1107 (giving the debtor in possession the rights and powers to perform the functions and duties as if a trustee); *In re Schupbach Invs., L.L.C.*, 808 F.3d 1215, 1223 (10th Cir. 2015) ("For purposes of Chapter 11 bankruptcies, a 'debtor-in-possession' is a debtor *who remains in possession of the pre-petition assets* and *administers them* for the benefit of the

Debtor's case contains language delaying its effective date until ten days *after* the confirmation order becomes final, documents, actions, and agreements necessary to implement the UCC plan have been executed, closing on the redemption of the ARCO stock has occurred, and the trust payment has been received.[80] As noted above, Debtor appealed the Bankruptcy Court's plan confirmation order.[81] That decision was upheld on appeal to this court,[82] and to the Tenth Circuit Court of Appeals.[83] The appeal time has not run on a potential further appeal to the United States Supreme Court, and regardless, the additional actions concerning execution of necessary documents, redemption of the ARCO stock, and payment have not occurred.

As a result, Debtor remains the debtor in possession because the UCC plan's confirmation is not yet final.[84] Additionally under § 1112(a), a chapter 11 debtor seeking

creditor body pursuant to 11 U.S.C. § 1107. Once the Creditors' Plan was confirmed, the Debtor (which had been dissolved) no longer satisfied this description of a debtor-in-possession." (internal quotation and citation omitted)).

[80] *Second Amended Chapter 11 Plan of Reorganization of the Official Committee of Unsecured Creditors* at 15, *in* Appellant's App. at 3053 (defining "Effective Date" as "the date ten (10) business days after all of the following conditions have been satisfied: (i) the Confirmation Order shall have been entered an shall be a Final Order; (ii) all documents, actions, and agreements necessary to implement the Plan have been executed; (iii) closing on the ARCO Stock Redemption shall have occurred; and (iv) receipt by the Creditor Trustee of the Trust Payment.").

[81] *Notice of Appeal*, *in* Appellant's App. at 3869.

[82] *In re Kearney*, No. NM-19-010, 2019 WL 6523171 (10th Cir. BAP Dec. 4, 2019) (unpublished), *aff'd sub nom. Kearney v. Unsecured Creditors Comm.*, ___ F.3d ___, 2021 WL 710850 (10th Cir. 2021).

[83] *Kearney v. Unsecured Creditors Comm.*, ___ F.3d ___, 2021 WL 710850 (10th Cir. 2021).

[84] The Bankruptcy Court also entered the parties' stipulated order clarifying that Debtor is a debtor in possession. *Stipulated and Default Order Resolving Motion for Clarification* at 3, *in* Appellant's App. at 4455 ("The Debtor is a Debtor-in-Possession until the Effective Date."). Obviously, at some point, Debtor's appeal of the conversion order may become constitutionally moot. *See Church of Scientology of Ca. v. United States*, 506 U.S. 9, 12 (1992) (stating that an

to convert to chapter 7 under § 1112 cannot be in chapter 11 because of an involuntary petition and cannot have been converted to that chapter by other than the debtor's request. Debtor filed a voluntary petition to initiate his case,[85] satisfying both these limits on conversion.[86]

Second, and the matter at issue in this appeal, under the express dictate of § 1112(f), there is a final limit on conversion. Under § 1112(f), "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter."[87]

Subsection (f) of § 1112 cannot be considered without a thorough understanding of two Supreme Court decisions: *Marrama v. Citizens Bank of Massachusetts*[88] and *Law v. Siegel*.[89] In *Marrama*, the debtor filed a voluntary chapter 7 petition, and thereafter sough to convert to chapter 13 under § 706, arguing he had an absolute right to convert over the objection of his creditors and the chapter 7 trustee, who argued the debtor had engaged in bad faith.[90]

Like § 1112, § 706 contains both an initial subsection granting a debtor the right to convert, but also a subsection limiting that conversion. The two statutory sections are compared here:

---

appeal is constitutionally moot if events have taken place during the pendency of the appeal that make it impossible for the court to grant any effectual relief).

[85] *Petition*, *in* Appellant's App. at 169.

[86] Appellees acknowledge that Debtor meets these first three limits on conversion from § 1112(a). Appellee's Br. 25 ("Kearney meets the threshold requirements in Section 1112(a)[.]").

[87] 11 U.S.C. § 1112(f).

[88] 549 U.S. 365 (2007).

[89] 571 U.S. 415 (2014).

[90] *Marrama*, 549 U.S. at 369-70.

| Section 706:[91] | Section 1112:[92] |
|---|---|
| (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable. | (a) The debtor may convert a case under this chapter to a case under chapter 7 of this title unless-- (1) the debtor is not a debtor in possession; (2) the case originally was commenced as an involuntary case under this chapter; or (3) the case was converted to a case under this chapter other than on the debtor's request. |
| (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter. | (f) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter. |

The Supreme Court rejected the debtor's argument that he had an absolute right to convert, noting that the right to convert under subsection (a) of § 706 was expressly limited by subsection (d).[93] The Supreme Court concluded there were "at least two"[94] possible limitations on a debtor's ability to qualify as a debtor under another chapter as required by subsection (d): § 109(e) (defining debt limits for individuals with regular income who may be a debtor under chapter 13) and § 1307(c) (governing standards for dismissal or conversion of a chapter 13 petition for cause).[95] Although none of the specific examples given in § 1307(c) address dismissal of a chapter 13 case based on

---

[91] 11 U.S.C. § 706.
[92] 11 U.S.C. § 1112.
[93] *Marrama*, 549 U.S. at 372 ("The words 'unless the debtor may be a debtor under such chapter' expressly conditioned [the debtor's] right to convert on his ability to qualify as a 'debtor' under Chapter 13.").
[94] *Id*. at 374.
[95] *Id.*

prepetition bad-faith conduct, the Supreme Court concluded that was "implicitly authorized" by the use of a "for cause" standard in § 1307(c).[96] Requiring a bankruptcy court to convert a chapter 7 case to chapter 13, only to thereafter dismiss the case or immediately return it to chapter 7 would be "a procedural anomaly."[97]

Again, the statutory framework analyzed in *Marrama* is very similar to the governing statutory sections herein. The debtor in *Marrama* sought to convert his case to chapter 13, and the Supreme Court concluded he would be limited by the chapter 13 standards for dismissing or converting for cause. Debtor herein seeks to convert to chapter 7, and like in chapter 13, there are statutory standards for conversion or dismissal of chapter 7 cases (in § 706(b) and § 707, respectively).

We conclude that *Marrama* controls: there is no "absolute right to convert"[98] a chapter 11 case to chapter 7, subsection (f) of § 1112 limits the right to convert found in subsection (a) of § 1112, and if a bankruptcy court finds that it would immediately dsmiss a chapter 7 case or reconvert it to chapter 11, it need not go through the "procedural

---

[96] *Id.* at 373-74 ("[Section] 1307(c)[] provides that a Chapter 13 proceeding may be either dismissed or converted to a Chapter 7 proceeding 'for cause' and includes a nonexclusive list of 10 causes justifying that relief. None of the specified causes mentions prepetition bad-faith conduct . . . Bankruptcy courts nevertheless routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause.' In practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct, including fraudulent acts committed in an earlier Chapter 7 proceeding, is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13.") (internal citations omitted).
[97] *Id.* at 368.
[98] *Id.* at 370.

anomaly"[99] of conversion before taking that step, but can instead deny conversion on that basis.

Debtor argues that the subsequent Supreme Court case *Law v. Siegel* provides that because § 1112 does not itself have language permitting denial of conversion for bad faith, courts may not consider a debtor's bad faith and limit the debtor's conversion on that basis.[100] In *Law v. Seigel*, the Supreme Court considered whether bankruptcy courts could surcharge a debtor's statutorily exempt assets, despite provisions of the Code forbidding exemptions from being used as payment for administrative expenses.[101] The Supreme Court answered this question emphatically in the negative: bankruptcy courts should not violate the express terms of the Code by using their § 105(a) powers to address bad faith.[102]

Importantly, however, the Supreme Court in *Law* addressed its decision in *Marrama*, and concluded it had no relevance to the situation in *Law*.[103] In *Marrama*, after reaching its conclusion that § 706(d) provided "adequate authority" [104] for the denial of the debtor's motion to convert, the Supreme Court noted that both the broad authority given bankruptcy judges in § 105(a) and the "inherent power of every federal court to

---

[99] *Id.* at 368.
[100] Appellant's Br. at 28 ("As the plain language of section 1112(a) does not provide an exception to conversion for bad faith, and *Law* provides that a bankruptcy court does not otherwise have the authority to contravene unambiguous provisions of the Code on equitable grounds—including bad faith—the bankruptcy court's decision in the present case was improper.").
[101] *Law v. Siegel*, 571 U.S. 415, 420 (2014).
[102] *Id.* at 421-22.
[103] *Id.* at 426.
[104] *Marrama*, 549 U.S. at 374.

21

sanction 'abusive litigation practices'"[105] might also provide an adequate justification for denying a motion to convert a bad faith debtor from chapter 7 to chapter 13. But the Supreme Court explained in *Law* that *Marrama* was really just saying that if an express action is authorized by the Code (i.e., the dismissal or conversion of a debtor's case), then a bankruptcy court may be able to use its § 105(a) or inherent powers to reach that result more expeditiously.[106] The express provisions of the Code must still be followed.

We know that § 1112(f) expressly requires courts to prohibit conversion to another chapter when the debtor cannot be a debtor under that chapter. The question we should be asking is whether there is an express provision of the Code that would permit the bankruptcy court to dismiss or reconvert Debtor's case immediately after granting a conversion from chapter 11 to chapter 7, i.e., prohibiting Debtor from being a debtor under chapter 7? If yes, then we need only ask whether that Code provision was applied correctly.

We acknowledge that, presumably knowing an appeal would follow, the Bankruptcy Court rested its denial of Debtor's motion to convert on multiple independent bases, namely, that (1) Debtor engaged in bad faith and was not entitled to be a debtor under chapter 7, (2) Debtor's case would immediately be reconverted under § 706(b) and so Debtor could not be a debtor under chapter 7, and (3) because Debtor's chapter 11 case already had a confirmed creditor plan, he was not entitled to convert under §

---

[105] *Id.* at 375.
[106] *Law*, 571 U.S. at 426 ("At most, *Marrama's* dictum suggests that in some circumstances a bankruptcy court may be authorized to dispense with futile procedural niceties in order to reach more expeditiously an end result required by the Code.").

1112(a). Has Debtor acted in bad faith? We would have no trouble affirming such a factual finding on the record before this Court.[107]

But that is not the question the Bankruptcy Court or this court should be asking. We affirm the Bankruptcy Court's denial of Debtor's motion to convert because it also followed the exact analysis required by *Marrama* and *Law*. It said that under § 1112(f), it would not permit conversion to chapter 7 when Debtor could not remain a debtor under that chapter. It then relied on § 706(b) to conclude that Debtor could not be a debtor under chapter 7. This was a correct application of the law. The Bankruptcy Court followed the directives of both *Marrama* and *Law* and hurried along what the Code expressly permitted.

We also acknowledge that there are cases holding that a bankruptcy court may not deny conversion under § 1112 because of pre-conversion misconduct, generally refusing to extend *Marrama* because of differences between the bankruptcy chapters therein and other bankruptcy chapters.[108] But we are not saying conversion to chapter 7 from an

---

[107] Note, for example, the Tenth Circuit's characterization of Debtor's conduct surrounding plan confirmation: "[T]he record is replete with evidence of Mr. Kearney's obnoxious conduct supporting that finding [that he is not a sympathetic plaintiff], including his misconduct with respect to the Trusts, his credibility issues, his contempt for the courts and the judicial process, and his appalling litigation habits."). *Kearney v. Unsecured Creditors Comm.*, ___ F.3d ___, 2021 WL 710850, at *11 (10th Cir. 2021); *see also id.* (referring to Debtor's "wrongdoings"); *Id.* at *12 (referring to Debtor's "unsavory conduct" and "his refusal to act responsibly"); *Id.* (noting Debtor "has significant credibility issues and seems comfortable lying under oath and otherwise"); *Id.* (noting that Debtor "has a well-established disdain for courts and the judicial processes"); *Id.* at *13 (referring to Debtor's "established contempt for the judicial system and courts"); *Id.* at *15 (referring to Debtor's "incessant lies, his mockery of the judicial system, or his litigious approach").

[108] *See, e.g.*, *In re Kimrow, Inc.*, 534 B.R. 219, 225-26 (Bankr. M.D. Ga. 2015) (questioning whether *Marrama* should be applied to conversions from corporate chapter 11 debtors to chapter 7, but concluding that even if there were "an extreme circumstances

individual chapter 11 is the same as conversion to chapter 13 from chapter 7. What we are saying is that bankruptcy courts are directed by § 1112(f) to look at the standards for debtors under the chapter to which the debtor is hoping to convert, and if that debtor could not be a debtor under that chapter because the bankruptcy court would exercise its discretion to immediately reconvert the case, then there is no reason to convert the chapter 11 just to dismiss or re-convert thereafter. We do not think that is an extension of *Marrama*.

We conclude that the Bankruptcy Court correctly applied the provisions of the Code. Yes, the Bankruptcy Court found Debtor had engaged in significant bad faith, and we are not saying that finding should not be considered at all. We conclude that as long as a bankruptcy court correctly applies a Code provision limiting a debtor's ability to proceed under the chapter they seek to convert, then that Debtor is ineligible to be a debtor under that chapter, and both *Marrama* and *Law v. Siegel* bless this course of action.

---

exception" to a debtor's right to convert under § 1112, it would not find it present upon the facts of that case); *but see In re Johnson*, 546 B.R. 83, 169-70 (Bankr. S.D. Ohio 2016) (refusing to conclude that a chapter 11 debtor had an absolute right to convert to chapter 7 when the debtor had exhibited bad faith, because that debtor's bad faith would subject his chapter 7 case to immediate dismissal under § 707(a), meaning he could not be a debtor under that chapter); *In re Modern Metal Prods. Co.*, 422 B.R. 118, 122 (Bankr. N.D. Ill. 2009) (noting that if granting a motion to convert from chapter 11 to chapter 7 "would serve no other purpose than to waste time and resources, or that the Debtor's only purpose in filing the motion was to delay, then under the reasoning of *Marrama*, the Court could certainly deny the Debtor's motion"); *see also* 7 *Collier on Bankruptcy* ¶ 1112.02 (Lawrence P. King ed., 15th ed. rev. 2000) ("Although not contained in the language of the statute, by extension of the conclusion in the United States Supreme Court's decision providing a bad faith conduct exception to a debtor's right to convert a case from chapter 7 to chapter 13, the right of a debtor under section 1112(a) to convert the case from chapter 11 to chapter 7 similarly may be qualified.").

24

B.     Application of the Statutory Directive in this Case

As stated throughout, the Bankruptcy Court ruled that Debtor's case would be immediately reconverted under § 706(b). Under § 706(b), "[o]n request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 at any time."[109] The Tenth Circuit has not addressed the question of what standard should be applied when a bankruptcy court considers conversion, or reconversion, under § 706(b). Other circuits have relied on the legislative history of § 706(b) that says:

> Subsection (b) permits the court, on request of a party in interest and after notice and a hearing, to convert the case to chapter 11 at any time. The decision whether to convert is left in the sound discretion of the court, *based on what will most inure to the benefit of all parties in interest.*[110]

A bankruptcy court has broad discretion to make conversion decisions under § 706(b).[111]

Taking this guidance, a bankruptcy court must ask what will most benefit "all parties in interest."[112] Not just a debtor, not just creditors, not just non-creditor parties.

---

[109] 11 U.S.C. § 706(b).

[110] H.R. Rep. No. 95-595, at 380 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 94 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787 (emphasis added).

[111] S*ee, e.g.*, *In re Takano*, 771 F. App'x 805, 806 (9th Cir. 2019) (unpublished) (reviewing denial of creditor's motion to convert chapter 7 case to chapter 11 and stating that court had "broad discretion to convert to a Chapter 11 case based on what will most inure to the benefit of all parties in interest" (internal quotation omitted)); *In re Schlehuber*, 558 F. App'x 715, 716 (8th Cir. 2014) (unpublished) (reviewing grant of creditor's motion to convert from chapter 7 to chapter 11 for abuse of discretion); *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1161 (5th Cir. 1988) (reviewing bankruptcy court decision to grant conversion of case to chapter 11 after prior conversion from chapter 11 to chapter 7 and holding the decision whether to reconvert a case back to chapter 11 after a prior conversion from chapter 11 to chapter 7 was "within the discretionary powers of the bankruptcy court based on the court's determination of what will most inure to the benefit of all parties in interest").

[112] H.R. Rep. No. 95-595, at 380 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963; S. Rep. No. 95-989, at 94 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787

Appeals courts have blessed various considerations for this analysis, including the viability of a chapter 11 plan,[113] "'anything relevant that would further the goals of the Bankruptcy Code,'"[114] but especially a debtor's ability to pay,[115] weighing of the benefit to each of the parties,[116] and a movant's "questionable" motives to "interfere with or impede" a chapter 11 reorganization.[117]

In this case, the Bankruptcy Court did not abuse its discretion in concluding it would immediately reconvert Debtor's case under § 706(b). The Bankruptcy Court expressly found that "Debtor's professed reason for conversion is a pretext," [118] and that Debtor's true aim was to defeat the UCC plan. Note the timing: Debtor claimed he had "no option but"[119] to convert to employ counsel in his criminal case, but the motion to convert was not filed until four months after the Bankruptcy Court denied his motion to employ counsel from estate funds and five months after Debtor actually engaged his

---

[113] *In re Bartmann*, 310 B.R. 663, 2004 WL 1057662, at *6 (10th Cir. BAP May 10, 2004) (unpublished) (noting that debtors could seek conversion under § 706(b) if they could propose a viable plan).

[114] *In re Schlehuber*, 489 B.R. 570, 573 (8th Cir. BAP 2013) (quoting *In re Gordon*, 465 B.R. 683, 692 (Bankr. N.D. Ga. 2012)), *aff'd* 558 F. App'x 715 (8th Cir. 2014);

[115] *Id.* (quoting *In re Gordon*, 465 B.R. 683, 692 (Bankr. N.D. Ga. 2012)), *aff'd* 558 F. App'x 715 (8th Cir. 2014); *see also In re LaFountaine*, No. CC-15-1426-LKITa, 2016 WL 3344003, at *3 (9th Cir. BAP June 7, 2016) (unpublished) ("While Section 706(b) does not mandate a balancing of parties' interests as a predicate to conversion of a chapter 7 case to chapter 11, courts consistently consider several factors, including a debtor's ability to fund a chapter 11 plan, in exercising their discretion under Section 706(b).").

[116] *In re Takano*, 771 F. App'x at 806 (weighing of benefits to all parties includes debtors' interest in the "quick discharge of their debts and a fresh start").

[117] *Matter of Texas Extrusion Corp.*, 844 F.2d at 1161; *see also In re Willis*, 345 B.R. 647, 655 (8th Cir. BAP 2006) (considering the debtor's "fraudulent, evasive, and uncooperative behavior" when affirming the denial of that debtor's motion under § 706(b)).

[118] *Opinion on Conversion* at 9, *in* Appellant's App. at 162.

[119] *Motion to Convert* at 5, *in* Appellant's App. at 147.

chosen counsel,[120] the motion to convert was filed shortly after a panel of this Court affirmed the Bankruptcy Court's order confirming the UCC plan,[121] and the motion to convert was filed nearly simultaneously with a motion to dismiss filed by Debtor's ex-wife, which the Bankruptcy Court found was itself likely an attempt to aid Debtor in defeating the UCC plan.[122] The Bankruptcy Court also concluded that the UCC plan was the best chance for creditors ever to be paid, noting that a chapter 7 trustee could not obtain the infusion of cash from the Abruzzos that the confirmed chapter 11 plan would provide.[123] The Bankruptcy Court concluded that conversion to chapter 7 would be "a terrible and unjust result for creditors,"[124] that Debtor was acting in bad faith, solely in his own interest, and ignoring the interest of creditors. The Bankruptcy Court found that the UCC plan was a great deal for Debtor and creditors, that administrative expenses and trustee fees in a chapter 7 would dilute any dividend to creditors, and that it was in the best interest of Debtor, and all interested parties for Debtor to remain in a chapter 11.[125] The Bankruptcy Court concluded: "Debtor's conduct in this case makes him ineligible to be a chapter 7 debtor, so the motion to convert should be denied."[126]

---

[120] Debtor's engagement letter with counsel was signed September 16, 2019, the Bankruptcy Court's order denying Debtor's application to employ counsel with estate funds was entered October 24, 2019, and Debtor's motion to convert was filed February 28, 2020.

[121] The opinion of this Court affirming the Bankruptcy Court's confirmation of the UCC plan was entered December 4, 2019.

[122] The motion to dismiss by Debtor's ex-wife was filed March 3, 2020, two business days after Debtor filed his motion to convert.

[123] *Opinion on Conversion* at 10, *in* Appellant's App. at 163.

[124] *Id.*, *in* Appellant's App. at 163.

[125] *Id.* at 12, *in* Appellant's App. at 165.

[126] *Id.* at 13, *in* Appellant's App. at 166.

Debtor argues that the findings from the Bankruptcy Court rested on pure litigation tactics, and should not have been considered. Again, we find no error in the Bankruptcy Court's judgment. We give deference to the Bankruptcy Court here, as we should. It is the Bankruptcy Court that has had the first-hand experience with Debtor, the creditors, and all parties in interest. The Bankruptcy Court did not consider each of Debtor's litigation tactics in a vacuum. Rather, it issued an inordinate number of opinions in Debtor's bankruptcy case, assessed Debtor and his motives, creditors and their motives, the documentary evidence, the credibility of every witness, and so much more. The Bankruptcy Court relied on the totality of the circumstances—the knowledge it gained from the over thirty-three months this case had been on file when it issued its opinion on Debtor's motion to convert, not to mention the two-day trial on confirmation of the UCC plan, and the countless other hearings in this case.

As noted above, the Bankruptcy Court alternately held that a chapter 11 debtor with a confirmed creditor plan loses the right to convert, even if he remained a debtor in possession, because allowing a debtor to convert after confirmation of a plan would "severely undermine the potent creditor threat of a competing plan and tilt the playing field unfairly in the debtor's favor,"[127] citing *In re Pero Brothers Farms, Inc.*,[128] and *In*

---

[127] *Opinion on Conversion* at 8, *in* Appellant's App. at 161.
[128] 91 B.R. 1000, 1001 (Bankr. S.D. Fla. 1988) (confirming a creditor's liquidating plan and denying a debtor's motion to convert the case to chapter 7 even though a motion to reconsider the confirmation order was still pending; recognizing that allowing a debtor in possession to convert a case would "deprive creditors of their statutory right under § 1121(c) to file a plan").

28

*re West Pointe Ltd. Partnership*,[129] in support of this so-called "confirmed creditor plan exception" to conversion.[130] We agree that a chapter 11 debtor with a confirmed creditor plan is less likely able to convince a court that conversion will "most inure to the benefit of all parties,"[131] but believe that a confirmed creditor plan should be just one factor bankruptcy courts look at to determine what will benefit all parties in interest.

Finally, we reject Debtor's argument that the Bankruptcy Court abused its discretion on his motion to convert, by not reassessing the arguments Debtor previously made as to his Sixth Amendment right to counsel for his criminal indictment. Debtor's arguments on the Sixth Amendment issue were decided by the Bankruptcy Court in a thorough opinion rejecting his application to employ counsel with estate funds.[132] That decision was not appealed and is final. Regardless, it was not an abuse of discretion to reject these arguments in light of the other factors considered by the Bankruptcy Court in this matter.

IV.    Conclusion

For the foregoing reasons, we affirm the decision of the Bankruptcy Court.

---

[129] 270 B.R. 481, 484-85 (Bankr. E.D. Mo. 2001) (concluding that a court should consider the interests of creditors when ruling on a postconfirmation motion to convert).

[130] *Opinion on Conversion* at 7-8, *in* Appellant's App. at 160-61.

[131] *Id.* at 11, *in* Appellant's App. at 164 (citing *In re Schlehuber*, 489 B.R. 570, 573 (8th Cir. BAP 2013), *aff'd* 558 F. App'x 715 (8th Cir. 2014)).

[132] *Opinion on Employment* at 7-10, *in* Appellant's App. at 4319-22.